# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NVR, INC., )
        Plaintiff, )
) Civil Action No. 2:16-cv-00722
v. )
) Judge Mark R. Hornak
MOTORIST MUTUAL INSURANCE CO., )
        Defendant. )

## OPINION

**Mark R. Hornak, United States District Judge**

This is an insurance case where the Plaintiff, NVR, alleges that the Defendant, Motorist Mutual Insurance Company ("MMI"), failed to defend or indemnify it in two underlying suits arising out of a construction-site explosion. Before the Court is MMI's Amended Motion to Dismiss (ECF No. 11). The question is whether, in its Amended Complaint (ECF No. 9), NVR sufficiently stated claims for breach of contract (Counts II and III) and insurance bad faith (Count IV) under Pennsylvania law.[1]

## I. BACKGROUND[2]

In March 2012, Gary Loy filed a lawsuit against NVR, a residential builder, alleging that he was severely burned and injured when a defective temporary propane heater exploded at the site of one of NVR's construction projects. ECF No. 9 at 3-4. NVR had engaged Rusmur, a contractor, to perform flooring work at the site. *Id.* at 4. According to NVR, some of Rusmur's subcontractors repeatedly attempted to light the propane heater while they were working at the

---

[1] The Court's subject-matter jurisdiction is based on diversity of citizenship of the parties. The substantive law of the forum state applies. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). The parties do not dispute that Pennsylvania law governs, and the Court agrees.

[2] The Court accepts as true NVR's allegations in its Amended Complaint, ECF No. 9, and all reasonable inferences that can be drawn from them.

site on a cold weekend in February 2011. *Id.* at 5. After these attempts, NVR says, Rusmur's subcontractors left open the main gas valve connecting the heater to an outdoor propane tank despite NVR's instructions not to do so. *Id.* When Mr. Loy arrived on the following Monday, the propane heater exploded, injuring him and causing damage to the site. *Id.* at 6-7.

NVR and Rusmur were working together under a contract (the "Agreement") in which Rusmur promised to carry general commercial liability insurance and to list NVR as an insured. *Id.* at 8-9. NVR and Rusmur's Agreement also required that Rusmur indemnify NVR if Rusmur was solely liable for personal injury or property damage at the site. *Id.* at 10. Pursuant to the Agreement, Rusmur's chose Defendant MMI as its insurer. *Id.* at 12. Rusmur's policy with MMI named NVR as an insured and stated that MMI would provide coverage for an insured who become obligated for the costs of bodily injury or property damage. *Id.* at 12-13.

After the explosion, NVR defended and settled the personal injury lawsuit brought by Mr. Loy (the "Loy Suit") in March 2012. *Id.* at 3, 11. NVR also filed suit against Rusmur for damages to the construction site ("Property Damage Case") in June 2012. *Id.* at 7. Now, NVR alleges that Rusmur's chosen insurer, MMI, refused to defend or indemnify NVR as required.

## II. **LEGAL STANDARD**

Under the familiar plausibility standard governing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

## III. ANALYSIS

### a. Counts II and III (breach of contract)

MMI first contends that Counts II and III of NVR's Complaint, the breach of contract claims arising out of MMI's refusal to defend or indemnify, should be dismissed because the policy required NVR to notify MMI of its defense of the underlying cases "as soon as practicable" and NVR failed to do so. ECF No. 12 at 8. MMI bases its argument on the assertion that NVR did not provide notice until August 14, 2015—more than three years after the Loy Suit and the Property Damage Case were filed. *Id.* at 10. NVR responds that it alleged in its Amended Complaint that MMI had notice of NVR's defense almost immediately because MMI was actively involved in the investigation, litigation, and mediation of both cases since their inception. *Id.*; *see also* ECF No. 9 at 6-8.

In *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66 (1977), the Pennsylvania Supreme Court examined the question of whether and when a provision in an insurance contract which requires notice "as soon as practicable" leads to forfeiture on the part of the insured. There, a motorcyclist was involved in an accident with a seventeen year old car driver. *Id.* at 68. The driver's insurance company was not notified of the suit until six months after it was filed. *Id.* The Court held that, in order to be relieved of its duties under the policy, the insurer bears the burden of proving not only that the notice provision of the policy was breached but also that the insurer suffered prejudice as a result of the breach. *Id.* at 71-72. The insurer should bear that burden, it reasoned, because insurance policies are not negotiated agreements and because strict enforcement of such clauses would lead to total forfeiture. *Id.*

This Court cannot, under the prevailing law as set forth in *Brakeman*, grant MMI's Motion to Dismiss Counts II and III. First, if the Court accepts NVR's factual allegations as

3

true—as it must at this stage of the litigation—then MMI had the requisite notice of NVR's defense from the very outset of the underlying cases. Even if that were not the case, MMI's request that it be granted relief from the claims in Counts II and III is premature because MMI has simply stated—but not proven—that it suffered prejudice.

MMI also contends that Counts II and III of NVR's Complaint should be dismissed because the contract between NVR and Rusmur Floors providing for indemnification does not cover the claims at issue in the underlying cases. ECF No. 12 at 12. MMI bases its argument on the contractual language, which states that Rusmur "agrees to indemnify NVR . . . for . . . any and all liabilities, losses and costs [] caused solely by the negligence of [Rusmur], its subcontractors, employees, officers, agents, or any third parties to this agreement" including "any alleged personal injury, bodily injury, death or property damage arising from or connected with the [w]ork." ECF No. 12 at 11-12. The contract also states that "no provision . . . shall obligate [Rusmur] to indemnify NVR . . . for any liability attributable to the sole or concurrent negligence of NVR." *Id.* at 12. The Loy Suit and the Property Damage Case, MMI argues, did not arise because of damages caused solely by the negligence of Rusmur or its agents. *Id.* Instead, MMI alleges that NVR was solely or concurrently liable. *Id.* MMI asserts that it made the determination that NVR was liable, and that Rusmur was not liable, solely "on the face of the underlying [c]omplaint." *Id.*

To the contrary, NVR pled sufficient factual allegations to show it is plausible that the Loy Suit and the Property Damage Case fell within MMI's contractual obligation to indemnify. NVR alleged that in the Loy Suit it defended claims for damages from personal injuries suffered during an explosion at the worksite which was connected with the construction project. ECF No. 9 at 2. NVR further alleges that in the Property Damage Case it sued Rusmur for property

4

damage arising from the same worksite explosion. *Id.* Each of these assertions is supported by numerous factual allegations about the time, place, and manner of the explosion, as well as the responsible part(ies). *Id* at 3-8. Accepting these allegations as true, the Court concludes it is plausible that the Loy Suit and Property Damage Case fell within the range of cases for which MMI was obligated to indemnify NVR. MMI's bald assertions about who is or may be liable in the underlying cases—conclusions for which no evidence has yet been adduced in the record—do not necessitate the dismissal of Counts II and III.

### b. Count IV (insurance bad faith)

MMI's final argument is that NVR failed to state a claim for bad faith because NVR failed to notify MMI of its defenses to the underlying cases as soon as practicable and because MMI correctly interpreted and applied the terms and conditions of its policy regarding the parties' respective liability to deny coverage. ECF No. 12 at 14.

Under Pennsylvania law, a claim of insurance bad faith arises where an insurer refuses—without good cause—to defend or indemnify where the policy provides for coverage. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 750-51, n.9 (3d Cir. 1999). Such a claim may be supported by allegations showing a frivolous or unfounded refusal to pay, a lack of investigation into the facts, or a failure to communicate with the insured. *Id.* Mere negligence or bad judgment does not constitute bad faith, but actual knowledge or reckless disregard of a lack of a basis for the denial of coverage may. *Id.*

Here, if the Court accepts NVR's factual allegations as true, then MMI had the requisite notice of NVR's defense from the very outset of the underlying cases. In addition, NVR pled that MMI refused to provide coverage in the underlying cases without any legal or contractual justification despite the fact that MMI was aware of the cases and had set aside a litigation

5

budget for them, and that MMI continued in its refusal after both NVR and a mediator informed MMI of its purported obligation. ECF No. 9 at 14-15, 20-21. MMI's unsupported assertion that it was correct in its refusal to provide coverage is not sufficient for the dismissal of NVR's well-pled claims of insurance bad faith without the opportunity for discovery.

## IV. CONCLUSION

For the above reasons, MMI's Motion to Dismiss, ECF No. 11, will be DENIED.

**Mark R. Hornak**
**United States District Judge**

Dated: November 28, 2016
cc: All counsel of record